UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROL HALL,
                          Plaintiff,

    -against-                                  6:05-CV-01462
                                                                  (LEK/GJD)
JAMES BROWN, individually and in his official
capacity as Mayor of the City of Rome,
RICHARD FERRUCCI, individually and as Police
Detective of the City of Rome,
FRANK TALLARINO, individually and as DPW
Commissioner of the City of Rome, and
THE CITY OF ROME, NEW YORK,
                              Defendants.
_____

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

In April, 2004, two employees of the City of Rome V.I.P. Municipal Transportation Department ("V.I.P.") approached Defendant Frank Tallarino ("Tallarino"), Department of Public Works Commissioner, regarding fellow employees' practices of improperly recording time on payroll time sheets. Tallarino Supporting Dep. (Dkt. No. 12, Ex. H). These employees named four individuals, one of whom was Plaintiff Carol Hall ("Plaintiff"). Id. Tallarino, together with Defendant Mayor James Brown ("Brown"), approached the City of Rome Police Department ("R.P.D.") to discuss the allegations. Id. Defendant Detective Richard Ferrucci ("Ferrucci") was subsequently tasked to investigate the allegations. Ferrucci Aff. (Dkt. No. 3, Attach. 2) at ¶ 2.

Over the next several weeks, Ferrucci conducted surveillance of the implicated

---

[1] For printed publication by the Federal Reporters.

1

employees, including Plaintiff. Id. at ¶ 3-4. According to Defendants, Ferrucci's investigation and Plaintiff's time sheets during the surveillance period revealed several instances in which Plaintiff had indicated on her time sheets that she was at work at a time when Ferrucci had observed her to not be at work. Id. at ¶ 5. Ultimately, Ferrucci concluded that "[Plaintiff's] abuse of time is blatant and she is consistently beating the system for 1-2 hours a day." Confidential Administrative Report (Dkt. No. 3, Attach. 2, Ex. A). Based on this conclusion and conversations with the Rome District Attorney's Office, Ferrucci, on June 9, 2004, approached Plaintiff and requested that she accompany him to the R.P.D. station for questioning, which she did. Ferrucci Aff. (Dkt. No. 3, Attach. 2) at ¶ 6; Criminal Trial Transcript (Dkt. No. 3, Attach. 2, Ex. D) at 167. There is dispute as to whether, at that time, Plaintiff voluntarily accompanied Defendant Ferrucci or was arrested by him. While at the R.P.D. station, Plaintiff was questioned, with counsel present, concerning the results of Ferrucci's investigation. Ferrucci Aff. (Dkt. No. 3, Attach. 2) at ¶ 6. Following the conclusion of this questioning, Plaintiff signed a statement indicating, among other things, that she had reported hours on her time sheets that she had not worked and had collected paychecks for those hours. Ferrucci Aff. (Dkt. No. 3, Attach. 2) at ¶ 6; Hall Criminal Statement (Dkt. No. 3, Attach. 2, Ex. B).

Plaintiff was then immediately suspended, with pay, from her position with the Defendant City of Rome on June 9, 2004. Complaint (Dkt. No. 1) at ¶ 20. Subsequently, she was suspended without pay on July 1, 2004, pending the outcome of a due process hearing. Notice of Suspension Without Pay (Dkt. No. 3, Attach. 4, Ex. A) at 1. Plaintiff, together with a union representative, appeared at a due process hearing on July 13, 2004, during which Plaintiff

offered several defenses, but the hearing panel found that she failed to present any supportive evidence.  Notice of Termination (Dkt. No. 3, Attach. 4, Ex. A).

On July 15, 2004, Ferrucci filed two felony complaints against Plaintiff, charging her with two counts of Falsifying Business Records in the First Degree in violation of New York Penal Law §175.10.  Criminal Complaints (Dkt. No. 3, Attach. 2, Ex. B).  As a result of the filing of these criminal complaints, together with the results of Ferrucci's investigation, Plaintiff's statement, and the outcome of her due process hearings, Defendant City of Rome determined that Plaintiff "failed to perform [her] duties and fraudulently received compensation from the City."  Notice of Termination (Dkt. No. 3, Attach. 4, Ex. A).  This resulted in the termination of Plaintiff's employment, effective August 11, 2004.  Id.

Following her termination, Plaintiff applied for and was denied unemployment benefits from the New York State Department of Labor.  Notice of Unemployment Decision (Dkt. No. 3, Attach. 4, Ex. C) at 1.  In response to this initial denial of benefits, Plaintiff requested and received a hearing before Department of Labor Administrative Law Judge Linda C. Lavery.  Id.  The sole focus of this hearing was whether or not Plaintiff had falsified her time sheets.  Unemployment Hearing Transcript (Dkt. No. 3, Attach. 4, Ex. B) at 88.  The Administrative Law Judge, in a March 31, 2005 decision, sustained the initial denial of unemployment benefits, finding that "claimant's time records submitted on May 14 and 25, 2004 were false" and that "submission of these records [for payment rose] to the level of misconduct," which disqualified Plaintiff from receiving unemployment benefits.  Notice of Unemployment Decision (Dkt. No. 3, Attach.4, Ex. C) at 2.

3

In December, 2004, the charges filed against Plaintiff by Ferrucci came before the Oneida County Grand Jury, and a six-count indictment issued against Plaintiff on December 14, 2004. Ferrucci Aff. (Dkt. No. 3, Attach. 2, Ex. C). A trial before the Oneida County Court, on July 18 and 19, 2005, resulted in the dismissal of all charges against Plaintiff. Deft's Mem. of Law (Dkt. No. 3, Attach. 5) at 6; Complaint (Dkt. No. 1) at ¶ 21.

In connection with the investigation conducted by the R.F.D. at the behest of Tallarino and Brown, Defendant City of Rome suspended, terminated, and pursued criminal charges against three additional V.I.P. employees, all of whom were male. Tallarino Supporting Dep. (Dkt. No. 12, Ex. H); Benedict Aff. (Dkt. No. 12) at ¶ 20. Two of these employees, Raymond Tebo, Sr. and Raymond Tebo, Jr., were also charged with, and ultimately convicted of, criminal falsification of business records. Certificates of Conviction (Dkt. No. 12, Ex. I).

## II. Discussion

### A. Standard of Review

Defendants move to dismiss Plaintiff's Complaint for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b) provides that "[i]f, on [such a motion to dismiss], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). Thus, as a threshold matter, it must be determined whether Defendant's Motion is to be assessed under the standard applicable to a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.

Defendants annexed several affidavits and exhibits to their Motion, which referred to

matters beyond those addressed in Plaintiff's Complaint. The Court has considered these materials; therefore, pursuant to Rule 12(b), the Motion to dismiss may be converted to a Rule 56 motion for summary judgment. This does not, however, end the inquiry.

Rule 12(b)(6) further requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Id. In assessing whether the parties have been afforded sufficient opportunity,

> [t]he essential inquiry is whether the [parties] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings. Resolution of this issue will necessarily depend largely on the facts and circumstances of each case. . . . Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted.

In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985).

Here, in addition to Defendants' submission of extrinsic materials in its Motion, Plaintiff's response itself contained additional extrinsic material. Indeed, Plaintiff invites the Court to convert Defendants' Motion in her counsel's affidavit, which asks the Court to "permit extrinsic matter from the pleadings to reach a question of summary judgment." Plntf's Aff. in Opposition to Defts' Motion to Dismiss (Dkt. No. 4) at ¶8.

Moreover, the extensive history of this dispute, which has resulted in a well-developed record, further supports the propriety of assessing the instant motion under Rule 56. This dispute, in one form or another, has proceeded through a number of different proceedings, namely two due process hearings, a grand jury proceeding, a criminal trial, and administrative proceedings. If either party possesses evidence helpful to its position, it is unlikely that such

evidence would not have already been proffered. All indications are that the record currently before the court is sufficiently well developed to enable the Court to make a proper summary judgment assessment and that further opportunity for discovery at this stage would be unlikely to produce any additional material evidence. Therefore, Defendants' Motion to dismiss will be assessed pursuant to the standard applicable to a motion for summary judgment under Rule 56.

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the Court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997). The party opposing the motion must set forth facts showing that there is a genuine issue for trial; the non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

*B. Federal Claims Under §1983 Against Defendants Brown, Ferrucci, and Tallarino*

To succeed with a claim based on 42 U.S.C. §1983, a plaintiff must show that the defendant acted under color of state law and deprived the plaintiff of rights secured by either a statute or the Constitution of the United States. Dwares v. New York, 985 F.2d 94, 98 (2d Cir. 1993). There is no dispute between the parties as to whether Defendants Ferrucci, Tallarino, and Brown, all municipal employees or officers, were acting under color of state law. There is, however, significant dispute as to the second element; Plaintiff alleges a number of violations of her constitutional and statutory rights.

1. Malicious Prosecution

Plaintiff grounds her §1983 claims for malicious prosecution in both the Fourth and Fourteenth Amendments to the Constitution of the United States. "The Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." Singer v. Fulton County Sheriff, 63 F.3d 110, 114 (2d Cir. 1995); see also Albright v. Oliver, 510 U.S. 266, 273 (1994). As such, Plaintiff's federal claims for malicious prosecution will be assessed as a single claim grounded in the Fourth Amendment.

To prevail on a claim for malicious prosecution under §1983, a plaintiff must show that 1) the defendant commenced or continued a criminal proceeding against the plaintiff, 2) the defendant commenced or continued the action maliciously, 3) there was no probable cause for the proceeding, 4) the proceeding ended in the plaintiff's favor, and 5) he or she was subjected to

7

a post-arraignment restraint sufficient to implicate the Fourth Amendment's protection against unlawful seizures. See Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996); Damiano v. City of Amsterdam, 466 F.Supp. 2d 456, 463 (N.D.N.Y. 2006) (Hurd, D.J.).

Under New York law, an indictment constitutes presumptive evidence that probable cause existed for purposes of a malicious prosecution claim. Colon v. New York, 60 N.Y.2d 78, 82 (N.Y. 1983). Though the presence of an indictment is not conclusive evidence of probable cause, the burden to rebut the presumption created by the indictment weighs heavily on a plaintiff asserting a post-indictment claim for malicious prosecution. In order to rebut the presumption, a plaintiff must show "that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Id. at 83; Savino v. City of New York, 331 F.3d 63, 68-69 (2d Cir. 2003).

The presumption attaches in this case, as Plaintiff was indicted by the Oneida County Grand Jury. Therefore, the inquiry must focus on Plaintiff's ability to rebut that presumption. Plaintiff's efforts to rebut this presumption center on conflicting statements made by Tallarino before the unemployment review board on November 30, 2004, the Oneida County Grand Jury on December 14, 2004, and the Oneida County Court during Plaintiff's criminal trial. The transcript of the unemployment board proceeding indicates that, on November 30, 2004, Tallarino testified, in response to a question regarding Plaintiff's employment status, that "she was a member of CSEA which was a salary employee unless there was [sic] other agreements made in that. We've always assumed she was salaried." Unemployment Hearing Transcript (Dkt. No. 4, Attach. 2, Ex. B) at 29. Before the Oneida County Grand Jury, Tallarino testified

8

"[t]here was an agreement prior to my coming to work with the city where I believe Miss Hall was paid as an hourly employee." Id. at 19. In addition, Tallarino later testified once again, at Plaintiff's criminal trial, that Plaintiff was a salaried employee. Plntf's Aff. in Opposition to Defts' Motion to Dismiss (Dkt. No. 4) at ¶ 14; Tallarino Aff. (Dkt. No. 12, Ex. F) at ¶ 3-4.

The crux of Plaintiff's argument is that Tallarino, realizing that Plaintiff's hourly/salaried employment status was a key fact in prosecuting Plaintiff, manufactured an indictment by perjuring himself before the grand jury by knowingly and falsely testifying that Plaintiff was an hourly employee. In order for such an argument to succeed at this stage, Plaintiff must raise a triable issue of fact as to whether Tallarino's inconsistent testimony before the grand jury was undertaken in bad faith to defraud the jury into returning an indictment against Plaintiff. See Colon, 60 N.Y.2d at 83.

Plaintiff offers an explanation for Tallarino's inconsistent testimony, but she offers no credible evidence to corroborate that explanation. To buttress her allegation that Tallarino's inconsistent testimony was given in bad faith, Plaintiff refers to the assertion, in her Complaint, of a political "scheme to coerce a discharge of plaintiff under false pretenses." Complaint (Dkt. No. 1) at ¶ 9. Defendant Tallarino's testimony, in Plaintiff's view, was but one brick in the wall that was the Defendants' fraudulent scheme to terminate Plaintiff. However, Plaintiff offers no evidence as to the existence of this alleged scheme on the part of Defendants other than self-serving characterizations of the events leading up to her dismissal.

On the other hand, Defendants offer significant objective evidence supporting the conclusion that Tallarino's inconsistent testimony arose not from a bad-faith intent, but rather

9

from simple misstatement. Importantly, given that Plaintiff's argument hinges on Tallarino's alleged perjury before the Oneida County Grand Jury, the evidence indicates that Tallarino's grand jury testimony was indeed accurate. The letter sent to Plaintiff in 1997 outlining the terms of her employment with the City of Rome indicates her rate of pay in hourly terms. Employment Status Letter (Dkt. No. 12, Ex. D). The employment terms further indicate, contrary to a salary arrangement, that Plaintiff was to be paid for overtime.[2] Id. The word "salary" appears nowhere in the terms of Plaintiff's employment. Furthermore, the affidavit of Denise Golden, Payroll Manager for the City of Rome, indicates that Plaintiff's pay "was derived by multiplying the number of hours she worked . . . by her applicable hourly pay rate" and that "[her pay] was subject to change depending on the specific number of hours she worked during a particular pay period." Golden Aff. (Dkt. No. 12, Ex. E) at ¶ 3. In addition, Plaintiff herself indicated, at the unemployment hearing of November 30, 2004, that "I believe I was an hourly employee. That's what my pay stub said." Unemployment Hearing Transcript (Dkt. No. 12, Ex. C) at 28. Plaintiff was once again asked about her employment status in her subsequent unemployment appeal, and she again indicated that "I was hourly." Unemployment Hearing Transcript (Dkt. No. 3, Attach. 4, Ex. B) at 52. In sum, it is apparent that, despite any inconsistency with others of his statements, Tallarino's grand jury testimony as to Plaintiff's employment status did not constitute perjury as intimated by Plaintiff.

Lastly Plaintiff simply offers no other evidence in support of a conclusion that the

---

[2] As Plaintiff's employment was part time, her "overtime" pay was not overtime in the normal sense. Rather, it was simply payment for hours worked beyond her normally scheduled number.

indictment returned against her by the Oneida County Grand Jury was procured in bad faith. The bald assertion of a fraudulent scheme that finds no support in the record is, without more, insufficient to raise a triable issue of fact as to whether Defendants harbored any bad-faith motive to prosecute defendant, particularly in the face of significant evidence to the contrary. Plaintiff cannot bootstrap mere inconsistencies in testimony to such a high standard of bad faith by baldly asserting the presence of a fraudulent scheme that has no basis in the record. The record before the Court thus supports the conclusion that no rational trier of fact could find that Defendants procured the indictment against Plaintiff by fraud, perjury, or conduct otherwise taken in bad faith. Therefore, because there can be no rebuttal of the presumption of probable cause attaching to Plaintiff's indictment, Defendants are entitled to summary judgment on Plaintiff's claim of malicious prosecution.

2. False Arrest and False Imprisonment

Plaintiff also asserts §1983 claims for false arrest and false imprisonment. In terms of §1983, these two causes of action are treated as a single tort. Gonzalez v. City of New York, No. 94 Civ. 7377, 1996 U.S. Dist. LEXIS 5942, at *12 (S.D.N.Y. May 2, 1996); see also Singer, 63 F.3d at 118 (referring to false arrest as "a species of false imprisonment"). In evaluating a §1983 claim for false imprisonment, New York law provides the relevant analytical framework. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). To establish a claim for false imprisonment under New York law, "the plaintiff must show that: 1) the defendant intended to confine [the plaintiff], 2) the plaintiff was conscious of the confinement, 3) the plaintiff did not consent to the confinement, and 4) the confinement was not otherwise privileged." Broughton v.

State of New York, 37 N.Y.2d 451, 456 (N.Y. 1975).

Unlike malicious prosecution, a claim for false arrest does not require a plaintiff to plead a lack of probable cause. However, where an officer acts with probable cause in arresting a suspect, that probable cause stands as a complete defense to a claim for false arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); see also Singer, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

In terms of the tort of false imprisonment, a defendant may not rely on a grand jury indictment to supply a presumption of probable cause. Broughton, 37 N.Y.2d at 455 (indicating that the presumption of probable cause attaching to an indictment "is totally misplaced when applied in false imprisonment actions"). In order for probable cause to lie, the facts surrounding the arrest and detention must give rise to "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Boyd, 336 F.3d at 75-76. Therefore, the existence of probable cause is assessed from the perspective of the arresting officer at the time of the arrest.

Here, the parties dispute whether or not the plaintiff was actually arrested. For purposes of this motion for summary judgment, it will be assumed that the Plaintiff was indeed arrested by Ferrucci on June 9, 2004. Thus, the inquiry must focus on the information as known by Ferrucci when he arrested Plaintiff on that date.

Prior to arresting Plaintiff, Ferrucci had conducted surveillance of Plaintiff over the course of several weeks. During that time, Ferrucci observed Plaintiff away from work at times when Plaintiff's time sheets indicated that she was at work. Confidential Administrative Report

(Dkt. No. 3, Attach. 2, Ex. A). Furthermore, Ferrucci had been given information, prior to his surveillance of Plaintiff, that members of V.I.P. had made complaints to Tallarino regarding employees not being at their assigned work sites during work hours. Criminal Trial Transcript (Dkt. No. 3, Attach. 2, Ex. D) at 160. It was these complaints that precipitated Ferrucci's being tasked with surveilling Plaintiff. Id. Ferrucci observed that Plaintiff's behavior during the surveillance period closely matched the allegations given to Tallarino. Id. at 162.

Furthermore, Ferrucci's criminal complaint charged Plaintiff with the crime of falsifying business records, which requires the "mak[ing] or caus[ing] of a false entry in the business records of an enterprise." NY PENAL LAW §175.05 (providing the substantive elements that form the basis of §175.10). The acts punished by this statute mirror very closely those acts Defendant Ferrucci observed Plaintiff engaging in; that is, he discovered employment time sheets, completed by Plaintiff, indicating that Plaintiff was at a particular place at a particular time when he had personally observed her to not be at that place at that time. Ferrucci's observations of Plaintiff clearly comported with the elements of a criminal statute. This, as a matter of law, provided Ferrucci with probable cause to arrest Plaintiff, which is a complete defense to Plaintiff's false imprisonment claim. Therefore, Defendants are entitled to summary judgment on this claim.

### 3. Due Process

Plaintiff's third cause of action seeks relief for deprivations of her liberty and property interests without due process of law, in violation of the Fourteenth Amendment. Any deprivation of Plaintiff's liberty in this case would be encompassed in her claim for False Arrest, as

discussed in Section II.B.2, *supra*. Moreover, it is no help to Plaintiff that the same claim is asserted again here under the Fourteenth Amendment as opposed to the Fourth Amendment. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Oliver, 510 U.S. at 273 (internal quotations omitted). Therefore, Plaintiff's claim that she was deprived of liberty without due process of law, being duplicative of her false imprisonment claim, cannot stand.

As to the claimed property deprivation, Plaintiff fails to assert what property interest she was deprived of without due process of law. However, the Court will assume that Plaintiff is referring to her termination from her employment with Defendant City of Rome. It is undisputed that Plaintiff was afforded two separate due process hearings, on June 30 and July 13, 2004, prior to her termination. Plaintiff does not attack the process she received as defective, instead offering only the nebulous claim that she was deprived of property without due process of law.

The only evidence made available to the Court does not support the conclusion that Plaintiff was deprived of any liberty or property interest without due process of law. Therefore, Defendants are entitled to summary judgment as to Plaintiff's third cause of action.

### 4. Equal Protection

Plaintiff also alleges that her federal equal protection rights were violated because she was discriminated against on the basis of her gender. Plaintiff alleges that, because of her gender, Defendants punished her more severely than her male counterparts were punished.

14

"An employee is denied her equal protection right to be free from gender discrimination when she is treated differently from other similarly situated employees, thus suffering disparate treatment because of gender." Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (internal quotation omitted). In assessing equal protection claims arising from such disparate treatment, courts apply the same burden-shifting approach that is used in assessing claims arising under Title VII of the Civil Rights Act of 1964. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006), overruled on other grounds, Raia v. Ill. Tool Works, Inc., 04-CV-3535, 2007 U.S. Dist. LEXIS 13537, at *17 (E.D.N.Y. February 23, 2007). Thus, in order to prevail on a claimed equal protection violation arising out of disparate treatment on the basis of gender, a plaintiff must show that "[s]he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of [gender]." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); see also Patane v. Clark, 435 F. Supp. 2d 306, 314 (S.D.N.Y. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)) (adopting the McDonnell Douglas burden-shifting approach for gender-discrimination cases).

Here, the investigation, from the outset, centered on three individuals besides Plaintiff, all of whom were male. Deps. of Gary Rutz and Ronald Montana (Dkt. No. 12, Ex. H). These individuals were suspended, and ultimately terminated, as was the plaintiff, and two of them were also charged with the crime of falsifying business records. The only conclusion supported by the evidence before the Court is that Plaintiff was treated no differently than her similarly situated male counterparts. Therefore, there can be no rational inference from the facts before the Court that the adverse employment action suffered by Plaintiff arose from discrimination

15

based on her gender.

### C. §1983 Claims Against Defendant City of Rome

In order for an action to lie against a municipality under §1983, there must be a showing both that there was a violation of a plaintiff's statutory or constitutional rights, and that such violation arose "pursuant to a governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)).  Therefore, as a threshold matter, before there need be any discussion of whether the actions taken by the state actors in question were pursuant to municipal policy, there must first be a violation of the plaintiff's constitutional or statutory rights.  As discussed in section II.B., *supra*, the facts of the instant case cannot support a finding that Defendants Ferrucci, Tallarino, or Brown violated any statutory or constitutional rights of Plaintiff.  Without such a violation, there can be no basis for Plaintiff's §1983 claims against Defendant City of Rome, regardless of whether or not the complained-of actions arose pursuant to municipal policy.  Therefore, Defendants are entitled to summary judgment as to Plaintiff's §1983 claims against Defendant City of Rome.

### D. State Law Claims

Plaintiff also raises a number of state law claims in addition to her federal claims under §1983.  Having disposed of all of the federal claims, see Sections II.B & II.C, *supra*, the only causes of action remaining are those arising under state law.  The Court's jurisdiction over these claims is predicated on their relation to other claims upon which the Court can independently exercise original jurisdiction.  See 28 U.S.C. §1367(a) (2006).  With these other claims having

been disposed of, there is no longer any basis for the Court to exercise jurisdiction over the remaining state law claims. These state law claims are, therefore, dismissed pursuant to 28 U.S.C. §1367(c)(3).

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 3) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:     April 25, 2007
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge